UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD MANSON and
THE MANSON GROUP,

        Appellants,

v.

KENNETH A. NATHAN

        Appellee.

_____/

Case No. 17-12256

Hon. Matthew F. Leitman

## ORDER (1) REVERSING BANKRUPTCY COURT'S JUNE 6, 2017, ORDER GRANTING APPELLEE KENNETH NATHAN SUMMARY JUDGMENT AND REQUIRING TURNOVER OF ASSETS AND (2) REMANDING FOR FURTHER PROCEEDINGS

This appeal arises out of an Adversary Proceeding in the Chapter 7 bankruptcy of Debtor Gregory Reed. Appellee Kenneth Nathan, the Bankruptcy Trustee for Reed's estate, filed the Adversary Proceeding against Appellants Richard Manson and The Manson Group. Among other things, Nathan sought entry of an order under 11 U.S.C. § 542 requiring Manson and his company to turn over to Reed's bankruptcy estate certain manuscripts written by Malcom X (the "Malcolm X Documents"). Manson resisted Nathan's turnover action. Manson insisted that he acquired the Malcolm X Documents from Reed in the 1990's, that he owned the Malcolm X Documents, that they were not the property of Reed's bankruptcy estate, and that Nathan was therefore not entitled to the turnover order he sought. The

Bankruptcy Court ultimately granted Nathan's motion for summary judgment on the turnover claim and entered an order compelling Manson and his company to deliver the Malcolm X Documents to Nathan (the "Turnover Summary Judgment Order"). (*See* ECF #1 at Pg. ID 5-6.) For the reasons explained below, the Turnover Summary Judgment Order is **REVERSED** and this appeal is **REMANDED** to the Bankruptcy Court for further proceedings consistent with this Order.

## I

The Bankruptcy Court held that Nathan was entitled to summary judgment for two primary reasons. First, the court concluded that Manson was collaterally estopped from claiming ownership of the Malcolm X Documents. (*See* 6/6/2017 Hearing Tr. at 46-50 ECF #8-1 at Pg. ID 1468-72.) Second, the court concluded that Manson's version of events was so lacking in credibility as to entitle Nathan to summary judgment. (*See id.* at 50-57, Pg. ID 1472-79.) The Court respectfully disagrees with the Bankruptcy Court on both points.

## A

The Bankruptcy Court first held that Manson was estopped from claiming ownership of the Malcolm X Documents by a March 29, 2007, state court order entered in Reed's divorce proceedings. In that order, the state court concluded that Reed owned the Malcolm X Documents. The Bankruptcy Court held that it was required to give full faith and credit to the state court order and that the order

collaterally estopped Manson from pursuing his claim that he acquired ownership of the Malcom X Documents from Reed years before Reed's divorce proceedings.

But Manson and his company are not bound by the state court divorce order under the doctrine of collateral estoppel. "For collateral estoppel to apply, the parties in the second action must be the same as or privy to the parties in the first action." *Rental Properties Owners Ass'n of Kent County v. Kent County Treasuer*, 866 N.W.2d 817, 835 (Mich. App. 2014). And neither Manson nor his company were parties to Reed's divorce proceedings nor in privity with Reed in those proceedings.

"To be in privity is to be so identified in interest with another party that the first litigant represents the same legal right that the later litigant is trying to assert." *Washington v. Sinai Hosp. of Greater Detroit*, 733 N.W.2d 755, 760 (Mich. 2007). Manson and his company were not in privity with Reed in Reed's divorce proceedings because Reed was not representing any legal right of Manson or his company, nor was Reed representing the right that Manson and his company sought to assert in the Adversary Proceeding. Reed argued in his divorce proceedings that the Malcom X Documents belonged to the Keeper of the Word Foundation ("KWF"). That assertion is contrary to Manson's position that he owned the documents at the time of Reed's divorce and contrary to Manson's assertion that he owns them now. Simply put, the interest Reed asserted in his divorce proceedings was adverse to Manson's claimed ownership interest. Under these circumstances,

Manson was not in privity with Reed during Reed's divorce proceedings, and Manson is thus not collaterally estopped by the state court divorce order.

The Bankruptcy Court concluded that Manson and his company were in privity with Reed in the divorce action because Manson personally sat on the board of KWF, which was established and controlled by Reed, and because Manson had knowledge of the divorce proceedings. But the Bankruptcy Court did not cite any authority to support the conclusion that these relationships between Manson and Reed rose to the level of privity. And during the hearing before this Court, counsel for Nathan was likewise unable to cite any authority to support the conclusion that Manson and his company were in privity with Reed in Reed's divorce proceedings. The Court is neither persuaded that Manson or his company were in privity with Reed during Reed's divorce proceedings nor that the state court order collaterally estops Manson from claiming to own the Malcom X Documents.

**B**

The Bankruptcy Court offered a lengthy, well-reasoned, and well-supported explanation as to why Manson's claim that he owns the Malcolm X Documents lacks credibility. This Court wholeheartedly agrees with the Bankruptcy Court's assessment of Manson's believability (or, more accurately, his lack thereof). For the reasons explained at length by the Bankruptcy Court (and others explained by this Court on the record during the hearing in this case), the claim by Manson that he

acquired ownership of the Malcolm X Documents in the 1990's does not pass the "laugh test."

But a court may not grant summary judgment based upon a credibility assessment drawn from a cold record. *See*, *e.g.*, *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) ("In reviewing a summary judgment motion, credibility judgments and weighing of the evidence are prohibited"); *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir. 2008) ("It is an error for the district court to resolve credibility issues against" a non-moving party on summary judgment); Anderson *v Liberty Lobby*, *Inc.*, 477 U.S. 242, 255 (1986) (same). Moreover, on summary judgment, "the facts and any inferences that can be drawn from those facts, must be viewed in the light most favorable to the non-moving party." *Bennett*, 410 F.3d at 817. Likewise, "any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true." *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004).

Here, Manson submitted affidavits and deposition testimony in which he repeatedly swore under oath that he has owned the Malcom X Documents since the 1990's. And even though Manson did not always offer consistent explanations as to how or when he obtained that ownership, on summary judgment, the Bankruptcy Court was required to accept Manson's sworn statements as true and construe any inconsistencies in the statements in his favor. Thus, Nathan was not entitled to

summary judgment on the ground that Manson's claim of ownership in his affidavits and deposition were not credible.

## II

The Court's ruling that Nathan was not entitled to summary judgment does not necessarily mean that Manson and his company are entitled to a jury trial on the turnover claim.  If the Bankruptcy Court were to conclude, after conducting an evidentiary hearing and considering the evidence bearing on the question of Manson's claim of ownership, that Manson's claim of ownership is not colorable, then the Bankruptcy Court would have the authority to enter the turnover order, and Manson and his company would not have a right to a jury trial on Nathan's turnover claim. *See Reed v. Nathan*, 558 B.R 800, 824 (E.D. Mich. 2016) (affirming turnover order entered by bankruptcy court after evidentiary hearing).   While Nathan may not have been entitled to summary judgment, there may well be ample basis to rule in his favor on the turnover claim without holding a jury trial.

## III

The Bankruptcy Court's June 6, 2017, Order granting summary judgment on Nathan's turnover claim is **REVERSED**, and this action is **REMANDED** to the Bankruptcy Court for further proceedings consistent with this Order.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
Dated:  February 5, 2018          UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 5, 2018, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764